Martin L. Massman, Appellee, v. Thomas J. Duffy et al., Defendants.
Appeal of Angelantonio Di Nunzio, Appellant.

Gen. No. 44,186.

32

Opinion filed December 10, 1947. Released for publication January 19, 1948.

EDWARD H. S. MARTIN, of Chicago, for appellant.

JOHN MULDER, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

In an opinion filed on November 20, 1946, we affirmed a foreclosure decree of the circuit court of Cook county entered on October 16, 1945 (see *Massman v. Duffy,* 330 Ill. App. 76). The complaint was based on senior and junior trust deeds. The court found that there· was due to the plaintiff under the first trust deed the sum of $47,997.97, and under the second trust deed the sum of $14,165.33. The real estate, located at the northeast corner of Kenneth avenue and Harrison street, Chicago, is improved with a building containing

10 apartments and 2 stores. The decree ordered the
sale of the premises under the senior encumbrance, ex-
cept the 4/33rds interest of Angelantonio Di Nunzio
and Serafina Palanza (should the indebtedness not be
paid), and foreclosed all right or equity of all defend-
ants, if the property be not redeemed according to
law, and further provided that if the sale did not bring
sufficient to satisfy the junior encumbrance also, then
the 2/33rds interest of Serafina Palanza be sold.

On May 20, 1947, plaintiff filed a verified petition in
the circuit court stating that the decree finds that
plaintiff has a first, prior and paramount lien on
29/33rds of the premises for the sum of $47,997.97,
and a junior lien on 31/33rds of the premises for the
sum of $14,165.35; that notice was about to be pub-
lished for the sale under the decree; that the building
is about 25 years old; that it produces an annual in-
come of $5,256; that the estimated operating expense,
including taxes, is $3,583.86; that the premises were
"recently appraised by a professional real estate ap-
praiser who placed an economic value on the property
in the amount of $17,030.00, and a physical value of
$22,155;" that the building on the premises has been
neglected for many years and is in serious need of re-
pairs, painting and decorating; that the general taxes
levied for the years 1929 to 1946, plus a three month
accrual for the year 1947, amount to $8,879.76 and re-
main unpaid; that interest and penalties on the taxes
accrued to April 1, 1947, amount to $8,529.14; and that
the premises represent "scant and inadequate se-
curity" for the mortgage indebtedness. Plaintiff
prayed that an order be entered appointing a receiver
for the premises, with the usual power to collect rent-
als and make disbursements in the maintenance and
preservation thereof.

Angelantonio Di Nunzio, one of the defendants, an-
swering, says that he is "in possession of the real
estate involved"; that he is the owner of an undivided

2/33rds interest therein, free and clear of all claims and liens of the plaintiff and unencumbered by any mortgage; that the master in chancery advertised that the real estate would be sold under the decree on May 13, 1947; that "although the advertisement was not in accordance with the decree ordering said sale," he, defendant, caused his attorney to attend the sale and protest against the holding thereof because it was not advertised in accordance with the decree; that notwithstanding the protest, the plaintiff was the highest, best and only bidder at the sale; that plaintiff bid $35,000 for, a 29/33rds interest in the real estate "under the first mortgage," and $12,000 for the other 2/33rds, not including the 2/33rds interest of defendant under the second mortgage; that the sale has not yet been confirmed; that the entire 33/33rds interest produces an annual gross income "if fully collected" of less than $5,175; that the annual operating expense varies from time to time and from year to year; that the building has not been neglected and is not in need of any unusual repairs, painting or decorating; that it has been kept in as good repair and condition as the income therefrom would reasonably permit; that defendant does not know the amount of the unpaid taxes, "but under agreement with the County Collector of Cook County, in order to prevent the appointment of a receiver under the Skarda Act, this defendant, beginning with July 29, 1944, to and including May 6, 1947, has paid $50 per month on account of said taxes, interest, penalties and costs, thereby greatly reducing the amount unpaid thereon, so that said unpaid amount is much less than stated in the petition of the plaintiff herein"; that no cotenant of defendant has ever objected to the acts or doings of defendant in the premises, or to the manner in which he has been managing the premises; that plaintiff has "no right to cause the ouster of this defendant from possession" by the appointment of a receiver in the foreclosure suit

"against the interests of defendant's cotenants, but not against the 2/33rds interest of defendant"; that plaintiff by bidding $12,000 for a 2/33rds interest and $35,000 for another 29/33rds interest "at a forced sale under a defective advertisement and subject to right of redemption, is estopped from claiming that the said 31/33rds interest in said real estate is worth less than the amount of the mortgage liens thereon being foreclosed in the above entitled cause, and is not entitled to have the value of his purchase enhanced by the payment of taxes by any receiver, nor by the making of unnecessary and unreasonable repairs, painting and decorating"; and that defendant and his cotenants are not personally liable for the indebtedness secured by the two trust deeds being foreclosed.

On June 10, 1947, the court entered an order appointing a receiver of an undivided 31/33rds of the premises and directing the receiver to take possession of the undivided 31/33rds of the premises, to operate, manage and conserve the real estate, to lease the property, to collect the rents, issues and profits thereof, to insure the premises against loss by fire or other casualty, to employ custodians, to pay the taxes, and to make necessary repairs. It was further ordered that the receiver should not in any way disturb the possession of Angelantonio Di Nunzio to a 4½ room apartment in the premises occupied by him, he being the owner of an undivided 2/33rds interest, not encumbered by the lien of the trust deeds. It was further ordered that the receiver should not assert any obligation for rent against Angelantonio Di Nunzio; that the court reserved jurisdiction to determine the amount of the rentals, if any, "which may be due to said Angelantonio Di Nunzio out of the rentals collected by the receiver . . . without in any way charging" him for receiver's fees or any other expenses which may result from the operation of the premises by the receiver. It was further ordered that

all defendants, except Angelantonio Di Nunzio, and all persons claiming by, through or under them, be restrained from interfering with, attaching, levying upon or in any other manner whatsoever disturbing the property or any part thereof, or from in any manner interfering with or preventing the discharge by said receiver of his duties as such receiver; that the receiver retain possession of the 31/33rds of the property and continue to discharge the obligations imposed upon him until the further order of the court, from time to time report his doings, from time to time apply to the court for such orders and directions as he may deem requisite to the due administration of his duties; that plaintiff give a bond of $2,000; and that the receiver give a bond of $5,000. The court found that it was necessary for the preservation, conservation and proper management of the premises and for the protection of the security of plaintiff that a receiver be appointed; that a fair valuation of the premises does not exceed the total of the unpaid indebtedness secured by the trust deeds and the unpaid taxes; that the premises are scant security for the indebtedness and that it will be necessary to resort to the rents, issues and profits of the premises in order to satisfy the indebtedness. Angelantonio Di Nunzio excepted to the findings and the order and prosecutes this appeal.

Appellant urges that the appointment of the receiver was erroneous because the possession of one cotenant collecting the rents is the possession of all the cotenants, none of whom can oust him as long as he does not act adversely to them; that it follows that "his possession and collecting" cannot be disturbed by a stranger to his title acting solely under title derived from his cotenants; that a suit to foreclose a mortgage on the interest of the other cotenants alone "is not the proper forum" for taking an account between the cotenant in possession and the others, instead of a plenary suit in which all the equities may be

determined; that sufficient factual basis for the order appealed from was not shown; that the directions to the receiver as to the possession, renting and management were improper; and that the injunction included in the order appointing the receiver was erroneous. Plaintiff insists that the court had the power to appoint a receiver for the premises, which it properly exercised; and that the order makes clear and adequate provision for the protection of the property rights of appellant. Appellant cites *Dunlavy v. Lowrie,* 372 Ill. 622, 25 N. E. (2d) 67, 72; *Fyffe v. Fyffe,* 292 Ill. App. 539, 11 N. E. (2d) 857, 862; *Hoppe v. Hoppe,* 104 Cal. 94, 102, 37 Pac. 894; *Shawnee Nat. Bank v. Van Zant,* 84 Okla. 107, 202 Pac. 285; and *Beam v. Scroggin,* 12 Ill. App. 321. In the *Dunlavy* case the court said that "mere possession by one tenant in common who receives the rents and pays the taxes assessed against the property, irrespective of how long continued, is not, of itself, sufficient to overcome the presumption of law that the possession of one is the possession of all the others." There the Supreme Court was discussing the defense of the Statute of Limitations against a remainderman, and held that mere knowledge of the fact of possession cannot be converted into proof of knowledge that those in possession are claiming adversely, there being no positive acts by those in possession to establish a disseizin. In the *Fyffe* case the court, passing on the Statute of Limitations, said that the mere intention of a tenant in common to oust his cotenant cannot have the effect of rendering the possession adverse as to the cotenant, but that only a clear, positive and unequivocal act manifesting a claim or exclusive right brought home to the knowledge of the cotenant would be sufficient for that purpose; that possession by a parent, husband, guardian, trustee, agent, tenant or party to any relation of a fiduciary character cannot be regarded as adverse where such possession is consistent with

the title of the real owner, unless and until the latter has had notice, by some clear, certain and unequivocal act of the one in possession, of his disclaimer and disavowal of title of the owner; and that parents' possession cannot be adverse during the minority of children. In the *Beam* case the court said (329):

"We know of no rule or precedent by which one co-tenant can be brought into court to answer to the judgment creditor of the other for improvements made by the latter upon the premises which are the subject of such co-tenancy, in advance of a suit for partition, wherein all the equities growing out of such co-tenancy up to the time of its severance may be adjusted."

In that case plaintiff who had obtained judgment against only one of the tenants in common sought to obtain satisfaction of a judgment against the property held by the tenants in common and sought to determine the rights of the tenants in common to certain improvements on the property. These three cases lay down general rules. In our opinion they are not helpful in deciding the points presented in the instant case.

A reading of the opinion in the *Hoppe* case discloses that there were two actions, the first to obtain a partition between the plaintiffs and Julia Hoppe of the land described, Fountain being made a party defendant because he claimed to be a mortgagee of the whole of the premises under a mortgage executed by Julia Hoppe, and the second being an action brought by Fountain against Julia Hoppe to foreclose the mortgage. The plaintiffs in the first action intervened in the second and by order of the court the two actions were consolidated. Fountain demurred to the complaint in partition, also to the complaint in intervention and to the answer of Julia Hoppe in the foreclosure case. These demurrers were sustained and judgment dismissing the action for partition and the complaint in intervention and foreclosing the mortgage was entered. On

December 20, 1888, Julia Hoppe executed a mortgage upon the whole of the homestead to Fountain to secure the payment of $5,000. Under the statute of California the homestead is for the use of the surviving husband or wife and the minor children. The Supreme Court of California held that the homestead must remain intact until the youngest child has reached its majority, and that it is not competent for either of the other cotenants to have a partition until that period has been reached; that as the owner of an undivided interest in the land it was competent for the mother to mortgage or convey such interest; that she could not, however, confer upon her grantee or mortgagee any greater rights in the premises than she herself held; that she could not destroy the homestead quality of the premises or deprive the minor children of their right to occupy the homestead; that any grantee of her interest must take it subject to the same limitations; and that as the purchaser under the decree would not have a right of entry upon the premises as a cotenant until the termination of the homestead, that limitation should be included in the decree under which the sale should be made. In sustaining the trial court, the California Supreme Court said (102):

"In the foreclosure of a mortgage made by one cotenant, of his interest in lands, the court will not while the proceedings are pending, or after judgment, interfere with the rights of the other cotenants, or attempt to disturb their possession; and any allegations in the complaint of a covenant in such mortgage for the appointment of a receiver, or any prayer in the complaint for a receiver, will be disregarded by the court, for the reason that it is not competent for one cotenant, either directly or through the aid of the court, to do any act which will impair the rights of the other cotenants."

The latter statement was not necessary to the decision of the case as the court held that the mother could not

destroy the homestead quality of the premises or deprive the minor children of their right to occupy the homestead, and that the court in the foreclosure proceedings would have no right to make any order which would affect the rights of any of her cotenants. The *Hoppe* case was cited with approval by the Supreme Court of Oklahoma in the *Van Zant* case.

Subject to' the rights of his cotenants, a cotenant of real property may use and enjoy the common estate in the same manner as though he were the sole proprietor. He may also occupy and utilize every portion of the property at all times and in all circumstances, but he has' no right to exclude his co-owners, or to appropriate to his sole use any particular portion thereof. The tenants out of possession may at any time assert their right to share in the possession, or may have the property partitioned by a division, each taking a distinct part according to the extent of his interest. The mortgagee may not maintain a partition suit. In *Rohrer v. Deatherage,* 336 Ill. 450, our Supreme Court said that in this State a mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee and his assigns; that while a mortgage conveys a title as between the mortgagor and the mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee; 'that after condition broken, the mortgagee is, as between him and the mortgagor, the owner of the fee; that upon default in the condition of the mortgage, the mortgagee has the right to possession against the mortgagor, his grantee, lessee or anyone claiming under him by any right; that in such case the mortgagee may sue the mortgagor in *assumpsit* for judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the

mortgaged property by an action of ejectment. In *Chicago Title & Trust Co. v. McDowell,* 257 Ill. App. 492, the court said (498): "A court of chancery will appoint a receiver upon a consideration of all the equities in the case." In passing on this appeal we should consider the interests of all the parties and the equities, and this we have done.

Appellant is the owner of a 2/33rds interest unencumbered by the mortgages. His cotenants reside out of the State. He has been in possession, collecting the rents. The sale was not for a sum sufficient to satisfy either the first or the second mortgages. Plaintiff's petition cites that the annual income is $5,256 and the operating expenses, including taxes, $3,583.86. Defendant's answer states that the annual gross income for the entire premises "if fully collected" is "less than $5,175," and that the annual operating expense "varies from time to time and from year to year." Thus, there is substantial agreement as to the income and no denial as to the operating expense. Taking the income as $5,000 and the operating expense, including taxes, as $3,600, leaves a balance of $1,400. The petition states that the general taxes for the years 1929 to 1946, amounting to $8,879.76 remain unpaid and that the interest and penalties to April 1, 1947, amount to $8,529.14. Defendant's answer states that he does not know the amount of the unpaid taxes on the premises, but that under an agreement with the county collector beginning with July 29, 1944, to and including May 26, 1947, he paid $50 per month on account of the taxes, interest, penalties and costs, and that thereby the unpaid taxes, interest, penalties and costs is less than the amount stated in the petition. Appellant does not state how much remained of the rents collected after he paid $50 per month on the taxes beginning July 29, 1944. It is apparent, however, that he could have paid a much larger sum. During all that time he has been occupying the apartment as well as retaining a

considerable part of the rents collected from the tenants.

In *Prussing v. Lancaster,* 234 Ill. 462, the court said (467):

"The premises did not sell for enough to satisfy the foreclosure decree, and there was a deficiency decree for $5598.44 in favor of appellees. In such case the practice is a proper one to apply to the satisfaction of such deficiency decree, through a receiver, the rents which may accrue upon the premises covered by the trust deed during the redemption period; and this may be done by a court of equity, although the trust deed is silent upon the subject of the application of the rents to the payment of any deficiency that may remain after the sale of the land covered by the trust deed."

In *Ruprecht v. Henrici,* 116 Ill. App. 583, the court said (586):

"But in the case at bar, appellee has what should have the effect of a deficiency decree, viz., a decree fixing the amount due him and finding it a lien on the mortgaged premises, which according to the cross-bill includes the rents and profits. The fact that the sale of the land did not realize enough to pay the cross-complainant shows that the security, aside from the rents and profits, is insufficient."

In *Strauss v. Georgian Bldg. Corp.,* 261 Ill. App. 284, the court said (288): "If the property were ample security, of course a receiver ought not to be appointed." In *Illinois Joint Stock Land Bank of Monticello v. Leas,* 273 Ill. App. 34, the court said (39):

"We believe the Circuit Court on November 1, 1932, and before the sale, had full power and discretion to set aside the initial order providing for a receiver, but on December 7, 1932, after the foreclosure sale and the entry of a deficiency judgment, the court erred in denying the application by appellant for the appointment of a receiver."

In *Powell v. Voight*, 348 Ill. 605, the court said (608):
"After the foreclosure sale and entry of the deficiency decree the trust deed remained in force as to the pledge of rents during the redemption period only for the purpose of satisfying the deficiency decree."

The fact that the sale did not realize sufficient to pay the indebtedness establishes that the real estate was not ample security for the indebtedness. Appellant points out, and we recognize, that none of the defendants is personally liable. Nevertheless, there is a deficiency. The fact of the deficiency and not the entry of a judgment against any person or persons under the deficiency is the important fact to be considered in the appointment of a receiver after sale. The order appoints Paul H. Altmeier receiver of an undivided 31/33rds of the premises. It enjoins him not to disturb the possession of appellant in the 4½ room apartment he occupies. It reserves jurisdiction to determine the amount of rentals, if any, which may be due to appellant out of the rentals collected, without charging him with receiver's fees or any other expenses which may result from the operation of the premises by the receiver. Appellant states that these directions are arbitrary and in disregard of his rights. We regard the order as reasonable. The appellant is permitted to occupy the apartment which he has occupied during the redemption period without paying any rent. The order reserves jurisdiction for the purpose of determining what, if any, portion of the rents so collected shall be paid to appellant. Tenants out of possession may at any time assert their right to share in the possession. The appointment of the receiver arises from the indebtedness owing under the mortgages by the cotenants of a 31/33rds interest in the premises. Plaintiff had no right to file a complaint in partition. Appellant cannot justly claim more than a 2/33rds interest. He could file a com-

plaint to partition, but cannot be required to do so. In *Morgan v. Herrick,* 21 Ill. 481, the court said (494):

"Each co-tenant is equally bound to keep the taxes paid, and one who pays all, can claim no advantage over the other on that account, he can only claim to be reimbursed with interest."

From the deplorable situation as to the payment of taxes it will be observed that appellant has emphasized his rights as a cotenant, but has not thought seriously of his duties as a cotenant. In our opinion the chancellor exercised a wise discretion in appointing the receiver.

Appellant asserts that the order enjoins all persons, tenants as well as others, from interfering with or preventing the discharge by such receiver of his duties, meaning, among other things, the collection of rents of the entire property, and demanding possession thereof from all tenants, in utter disregard of the wishes of the appellant and all other rights under leases made by him with the consent of his cotenants. The consent given by the cotenants was, of course, subject to the encumbrances. An unusual situation has arisen in this case. The mortgages were made by grantors of the parents of all the cotenants and covered the entire interest in the property. The situation presented has arisen because of the successful interposition by appellant as to a 2/33rds interest of his plea of the Statute of Limitations to the complaint to foreclose the equity of redemption. We are of the opinion that under the unusual circumstances presented and all of the equitable considerations that the order should stand. Therefore, the order entered by the circuit court of Cook county on June 10, 1947 is affirmed.

. *Order affirmed.*

Lewe, P. J., and Kiley, J., concur.