**In the Matter of Martin SZEKELY and Donna Szekely, Debtors–Appellants.**

**No. 90–1536.**

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1991.

Decided July 2, 1991.

Donald H. Geiger, Waukegan, Ill., Andrew J. Maxwell, Maxwell & Perlstein, Chicago, Ill., for debtors-appellants.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This bankruptcy appeal raises a surprisingly fundamental, and difficult, question (assuming we can get over a jurisdictional hurdle), on which we are unable to find any authority. The question is whether if a debtor continues to occupy his home after declaring bankruptcy, the trustee can

charge rent to him, notwithstanding the homestead exemption. The debtors in this case—a married couple named Szekely, living in Zion, Illinois—declared bankruptcy (originally under Chapter 13, later converted to Chapter 7—liquidation) on December 5, 1988. One of the assets of the bankrupt estate was the couple's home, on which there were both a first and a second mortgage. The Bankruptcy Code allows a state to require debtors to use the state's exemptions rather than the exemptions set forth in the Code itself. 11 U.S.C. § 522(b)(1); *First National Bank v. Norris*, 701 F.2d 902, 904 (11th Cir.1983). Illinois has taken up this option, and as a result each of the Szekelys was "entitled to an estate of homestead to the extent in value of $7,500," for a total of $15,000. Ill.Rev. Stat. ch. 110, ¶¶ 12–901, 12–1201.

The Szekelys continued living in · their home, though they made no payments on either mortgage. In April, the trustee asked the bankruptcy judge to order the couple to pay rent. Two months later the bankruptcy judge granted the trustee's request and fixed the rent at $600 a month, though it was understood that since the Szekelys couldn't pay, the rent would accrue, and would be deducted from their homestead exemption when the house was sold. In September, although the house hadn't been sold yet, the Szekelys vacated it, owing eight months' accrued rent— $4,800. In February of the following year, the district judge affirmed the bankruptcy judge's rent order. 111 B.R. 681 (N.D.Ill. 1990). The Szekelys now appeal the district judge's order to us. We were told at argument that the house has now been sold, for about $135,000, which is $30,000 more than the amount owing on the two mortgages and therefore enough to cover the entire homestead exemption. Yet if we affirm, the trustee will give the Szekelys only $10,200 ($15,000–$4,800).

■ The first question is whether we have appellate jurisdiction. Although the district judge can in his discretion review an interlocutory order made by a bankruptcy judge, our jurisdiction is confined to final orders by the district judge. 28 U.S.C. §§ 158(a), (d). An order by the district judge that, as here, affirms a bankruptcy judge's interlocutory order, so that the bankruptcy proceeding continues, is itself interlocutory for purposes of our jurisdiction—or rather lack of jurisdiction. *In re Behrens*, 900 F.2d 97, 99 (7th Cir.1990). Otherwise there would be two tiers of review for interlocutory orders by bankruptcy judges, and that is too many.

■ The order of the bankruptcy judge was interlocutory when entered not only in the sense that the bankruptcy proceeding was still pending, but also in the sense that the order itself was unliquidated. It was an order to pay so much per month till the debtors moved out of the house, and no one knew when that would be. The second point is more important than the first. In bankruptcy, once a liquidated claim is allowed—that is, once the bankruptcy court has decided that a specific creditor is entitled to a specified amount of money—either the trustee or the creditor, depending on who is dissatisfied with the decision (of course, both could be), can appeal as of right, because the decision to allow the claim is deemed a final order. *In re Jartran, Inc.*, 886 F.2d 859, 862 (7th Cir.1989). It is so treated because it is the practical equivalent of a final judgment in a stand-alone suit. A judgment does not lose its finality merely because there is uncertainty about its collectibility, corresponding to uncertainty about how many cents on the dollar the creditor will actually receive on his claim once all the bankrupt's assets are marshaled and compared with the total of allowed claims, and the priorities among those claims are determined.

■ Thus the fact that the bankruptcy proceeding continues before the bankruptcy judge does not preclude treating an interlocutory order by him—interlocutory in the sense that it does not terminate the entire proceeding—as final for purposes of appellate review. (And if it is final for those purposes, then so is the district court's affirmance of his order.) The "finality" of such a nonfinal order depends on whether it terminates what, but for bankruptcy, would be a stand-alone suit by or

against the trustee. *In re Morse Electric Co.*, 805 F.2d 262, 264–65 (7th Cir.1986); *In re Wagner*, 808 F.2d 542, 545 (7th Cir. 1986). Applying that principle here, we note first of all that the debtors were in a practical sense creditors in this matter, since they were claiming the right to withdraw from the estate the full amount of the homestead exemption, as distinct from that amount minus rent. And the trustee was, again in a practical sense, the plaintiff in a stand-alone suit to collect rent from debtors whose former property was now the property of the estate, making them in the trustee's view the equivalent of squatters. The trustee's claim for rent, along with the debtors' mirror-image claim for the part of the household exemption that the trustee is trying to withhold as rent, was unliquidated when entered. But since the amount depended mechanically on how long the debtors remained in the house, perhaps the allowance of the trustee's claim could be considered sufficiently definite to be final and appealable, under the principle that when only ministerial details remain to be attended to before a judgment can be reduced to a sum certain that is immediately collectible, the judgment is appealable without waiting for those loose ends to be tied up. *In re Jartran, supra*, 886 F.2d at 862; *In re Fox*, 762 F.2d 54, 55 (7th Cir.1985). Or perhaps not—perhaps it would be better to wait until the rental period ends because all sorts of issues may arise during the rental period that are best decided in a lump rather than piecemeal. The idea behind "ministerial details" is that if they are all that remain to be cleared up on remand, the remand is unlikely to lead to a second trial, so that allowing an appeal now will not result in a multiplicity of appeals. The spectre of piecemeal litigation would, however, stalk bankruptcy land if the rental period was likely to produce new appealable disputes between the parties.

We need not resolve the interesting question whether the bankruptcy judge's order was final when entered (remember that it didn't have to be final to give the district judge appellate jurisdiction). For, months before the district judge rendered *his* order, the debtors moved out of the house and the amount of rent due under the bankruptcy judge's order became a definite amount of money. The district judge's decision affirming that order was therefore a final decision when rendered, and we have jurisdiction after all.

In defending the judgment that he won below, the trustee points out correctly that the debtors' home became an asset of the bankrupt estate upon the declaration of bankruptcy. 11 U.S.C. § 541. Thus, by continuing to live in the house, the Szekelys were using an asset that belonged to the bankrupt estate, not to them. Therefore—the trustee argues—they should be required to pay rent for its use, just as anyone else leasing assets of the estate would be required to pay rent to the trustee. The argument is fine as far as it goes, but it doesn't leave much in the way of a homestead exemption. Imagine a case—this case, in fact—in which the debtors live in a relatively expensive home. They go broke, and naturally they want to live more modestly. If they move out, then under the trustee's view of the case they get nothing until the house is sold, at which time they get their $15,000. But since they get nothing till then, they will find it hard to arrange for substitute accommodations if they move out now. (Of course they can rent housing out of their current income, if they have any. But this would be true even if there were no homestead exemption, so it is a better argument against the exemption—though not an argument properly addressed to us, for we of course have no authority to abolish the exemption—than it is in favor of allowing the trustee to charge rent.) If, therefore, they decide to remain in their house—their house that was, now the property of the estate—they will, if the trustee prevails, be forced to pay rent based on the value of the house, a value geared to the debtors' standard of living before they went bankrupt. As the months pass, the accruing rent will dig a deeper and deeper hole in the homestead exemption; in this case it reduced it by a third. When the debtors finally move out they will have substantially diminished re-

sources with which to find alternative housing.

This is looking at the case from the debtors' point of view, and thus emphasizing the "fresh start" rationale of bankruptcy—that is, bankruptcy as a debtor's cushion against the effects of financial misfortune. Bankruptcy is equally a creditor's remedy, however, in particular a remedy of unsecured creditors, represented by the trustee. The house *was* an asset of the estate and *did* have a positive rental value that the debtors impaired by continuing to live in the house. If the house had been sold right after the Szekelys had declared bankruptcy, they would have gotten $15,000, period. If they prevail on this appeal, they will have got $15,000—plus free housing (well, almost free) for eight months. This overstates the windfall, because the present receipt of $15,000 is worth more in real terms than the receipt of $15,000 eight months later. Nevertheless the Szekelys *are* seeking a windfall. And the more valuable the house, the greater the windfall (for the greater the housing value is). But some degree of inequity is built into the homestead exemption: people too poor to own a house have no homestead exemption. This may be an argument against the exemption; and another argument, one not even limited to the homestead exemption, is that anything which impairs creditors' rights in bankruptcy drives up interest rates (for creditors will seek compensation in advance for any added risks of default), to the ultimate detriment of the debtor class. Indeed, the higher that interest rates are (other things being equal), the greater the risk of bankruptcy is, since interest is a fixed expense. But these are academic speculations, because we are not authorized to restructure bankruptcy law.

■ The competing thrusts of that law, as a debtor's and as a creditor's remedy respectively (though, as we have just said, it may only be in the short run that bankruptcy is *really* a debtor's remedy), are mirrored in the competing characterizations of the homestead exemption that the parties press on us. The Szekelys conceive of the exemption as a right to remain in one's home, rent-free, until the trustee either through sale or otherwise can pay the debtor the value of the exemption. They point out that Illinois law describes the exemption as an *"estate* of homestead," Ill.Rev.Stat. ch. 110, ¶ 12–901 (emphasis added), rather than using the humbler designation "homestead exemption," which is the formula in the list of federal statutory exemptions applicable in states that do not want their own exemptions applied in bankruptcy, 11 U.S.C. § 522(d)(1), and is also the formula found in most state statutes. (For illustrations, see Ind.Code § 34-2-28-1(a)(1); N.Y.Civ.Prac.Law and Rules § 5206, and Ohio Rev.Code § 2329.66(A)(1). For a complete list, see vol. 7 of *Collier on Bankruptcy* (Lawrence P. King ed., 15th ed. 1990).) They cite cases which hold that even though the title of the Illinois statute is "Exemption of Homestead" (Ill.Rev.Stat. ch. 110, art. 12, pt. 9), the term in the body of the statute, "estate of homestead," is not an archaic sonority but denotes a right to possession.

The trustee argues that the homestead exemption (or "estate") is not a possessory interest at all, but merely a lien—a claim to $15,000 if and when the house is sold or the claim, which is freely alienable, *Dixon v. Moller*, 42 Ill.App.3d 688, 690, 1 Ill.Dec. 411, 414, 356 N.E.2d 599, 602 (1976), is otherwise transferred.

The cases support the debtors' characterization. *Wiegand v. Wiegand*, 410 Ill. 533, 535, 103 N.E.2d 137, 139 (1952) ("homestead is an estate in land and not a mere exemption"); *Dixon v. Moller, supra*, 42 Ill.App.3d at 690, 1 Ill.Dec. at 414, 356 N.E.2d at 602 (it is a "possessory freehold estate"); *Willard v. Northwest National Bank*, 137 Ill.App.3d 255, 264, 92 Ill.Dec. 92, 97, 484 N.E.2d 823, 828 (1985) ("a freehold estate in land"). But none involves the precise issue here, the trustee's right to receive rent for the debtors' occupancy of their (former) house. Not even *Mix v. King*, 55 Ill. 434 (1870), on which the debtors principally rely. That case holds that the homestead exemption is possessory, all right; but it was not an insolvency case; it was a case of improper ejectment of the holder of an express right of homestead,

and thus was analogous to the wrongful eviction of a tenant. See also *In re Nye*, 133 Fed. 33 (8th Cir.1904). The trustee does not contest the Szekelys' right to occupy the house until it is sold or he pays them the amount of the homestead exemption; all he wants is rent; and since the cases are emphatic that the "estate" is limited by the value of the exemption, it is a little hard to see why the debtors should obtain in effect the full rental value of the house, over and above the exemption, without paying rent for that surplus comfort. On the other hand, the case on which the trustee principally relies holds only that if there is a right of ejectment (as there was not in *Mix*), the owner must pay off the homestead exemption before ejecting the homesteader. *Hotchkiss v. Brooks*, 93 Ill. 386 (1879). That is common ground among the parties to this suit.

Precedent does not decide our case. We must consider principle.

 Because the house belongs to the estate, the trustee can pay the Szekelys their $15,000 and tell them to skedaddle, and then rent the house to whomever he pleases until he sells it. That much is clear. And he can raise the $15,000 either by liquidating other assets of the bankrupt estate or, if there are insufficient other assets (as we may assume to be the case here), by taking out another mortgage on the house. The Szekelys' house, though, was already encumbered by two mortgages, and although in the end the house was sold for an amount that yielded enough equity over and above the mortgages (with all their arrearages) to pay the homestead exemption in full, the value of the house may have been too uncertain for the trustee to have been able to obtain a third mortgage, for $15,000, at a tolerable rate of interest. In that event he would (under the Szekelys' view of the case) have had to let them stay there rent free until he sold the house.

Some brokers believe that it is more difficult to sell a house with a tenant in it than with the house vacant, partly because it is easier to show a house when no one is living there and it is uncluttered with personal possessions and partly because the presence of a tenant will make it difficult for the owner to promise immediate possession to the buyer. (The argument *contra* is that a vacant house is uninviting.) So the trustee may not have wanted the Szekelys living there and paying rent, but may instead have wanted them out, and of course they were more likely to leave if they had to pay rent (eventually they did leave, perhaps for that reason, before the house was sold). If this is right, then had they moved out the trustee would not have rented the house to someone else. It would have stood vacant, yielding no income to him until he sold it. This suggests that he too is seeking a windfall, and that the real purpose of his charging rent was to induce the Szekelys to leave, so that the house could be sold more easily. To cast them out into the cold, as it were, without giving them the $15,000 to which the homestead exemption entitled them, undermined the purpose of the exemption, which is to assure the debtor adequate housing despite the economic disaster that has overtaken him. The harm to the debtor depends on how long it takes to sell the house. If it is sold right off, he gets the cash value of the exemption; but if there is a delay in selling it, he must arrange for substitute housing without the assistance that Illinois meant him to have through the homestead exemption.

We are just speculating that the trustee wanted the Szekelys out (though they did move out eventually, before the house was sold). But the speculation is not critical to our decision. The important thing is that whether they paid rent and stayed, or left before being cashed out of the homestead exemption, the value of the exemption to them was diminished. And while it is true that if the debtor can live rent-free in the house until it is sold he will have an incentive to delay the sale if he can, by the same token if the debtor can't live there rent-free the trustee has no incentive to sell the house as quickly as possible, and in addition the bankruptcy court must step in and fix a reasonable rental. The hardship to the debtor should have the greater weight in decision. The homestead exemption, perhaps especially when as here it is

capped at a relatively modest sum of money, is designed to assist the debtor *to the extent of the exemption* to obtain more modest living quarters. That aim is blunted if the trustee can in effect expel the debtor from the homestead (whether directly or by charging a rent geared to a standard of living that the debtor no longer can maintain) without giving him a penny of benefit from the homestead exemption.

There is an analogy to tenancy in common. Neither tenant can charge the other rent, but either can demand that the property be partitioned between them. *Massman v. Duffy*, 333 Ill.App. 30, 40, 76 N.E.2d 547, 551–52 (1947). The interaction of bankruptcy law and the homestead exemption made the Szekelys in effect cotenants, with the trustee, of the Szekelys' former house. The trustee was entitled to obtain sole rights to the property by paying off the homestead exemption—in effect a partition of the property in which the Szekelys would receive $15,000—but until then he had no right to disturb the Szekelys in their possession of the property. We hold that the homestead exemption in Illinois entitles the debtor to remain in his home rent free until he receives the cash value of the exemption. We therefore reverse the decisions below with directions to allow the debtors their full $15,000 from the proceeds of the sale of the house.