
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1166-FKuTa |
| VARDOUI MADATIAN, | Bk. No.    1:16-bk-10048-MB |
| Debtor. | |
| VARDOUI MADATIAN, | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| AMY L. GOLDMAN, Chapter 7 Trustee, | |
| Appellee. | |

Submitted Without Argument on January 24, 2019

Filed – February 11, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Martin R. Barash, Bankruptcy Judge, Presiding

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Appellant Vardoui Madatian, pro se, on brief; Brad D. Krasnoff, Aaron E. de Leest, and Sonia Singh of Danning, Gill, Diamand & Kollitz, LLP on brief for appellee Amy L. Goldman, Chapter 7 Trustee.

Before: FARIS, KURTZ, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Vardoui Madatian appeals from the bankruptcy court's order requiring her to vacate and turn over her residential property to chapter 7 trustee Amy L. Goldman ("Trustee"). She argues that she did not hinder the Trustee's attempts to market her property for sale and implies that she did not have to cooperate with the Trustee because the Trustee acted improperly. She also argues that she has a possessory interest in her property and that the Trustee failed to provide her with adequate protection before marketing her residence.

None of her arguments have any merit. We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTUAL BACKGROUND[2]

### A.    Ms. Madatian's state-court proceedings

Ms. Madatian and her son, Robert Madatian, began operating a home healthcare business in 2011. In November 2012, Iris Manuel, a nurse formerly working for Ms. Madatian and her son, sued them in the state court for allegedly failing to pay wages.

Ms. Manuel obtained a default judgment against Ms. Madatian and Robert in the amount of approximately $99,000, plus attorneys' fees totaling approximately $114,000. Ms. Manuel sought court approval to execute the judgment by selling Ms. Madatian's residence.

### B.    Ms. Madatian's bankruptcy proceedings

On January 8, 2016, Ms. Madatian filed a chapter 11 petition. She identified two real property assets: her residential property located on Texhoma Avenue in Van Nuys, California (the "Residential Property") and a six-unit apartment complex located on Delano Avenue in Van Nuys, California (the "Rental Property"). Ms. Madatian represented that she owns the Residential Property free and clear of any encumbrances.

Ms. Manuel filed a proof of claim for $412,413.83 based on the state court judgment. Ms. Madatian objected to the claim, and the bankruptcy

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

court allowed approximately $240,000.

In February 2018, the bankruptcy court converted Ms. Madatian's case to one under chapter 7 due to her failure to file required monthly statements. The court ordered Ms. Madatian to "turn over all assets to the Chapter 7 trustee, including all records and property of the estate."

Following conversion, the Trustee began collecting rent from Ms. Madatian's tenants at the Rental Property, took possession of approximately $8,000 that was in Ms. Madatian's debtor-in-possession account, and retained a real estate agent to sell the Residential Property.

## C.    Robert's motion to set aside the default judgment

After Ms. Madatian filed for bankruptcy protection, Robert moved the state court to set aside the default judgment against him. In November 2017, the state court voided ab initio the default judgment against Robert, ruling that the complaint failed to include "allegations that a specific sum was due, or other allegations sufficient to put defendant on notice of the sum of damages sought."

## D.    The motion for turnover

In May 2018, the Trustee filed a motion ("Motion for Turnover") to compel Ms. Madatian to vacate the Residential Property and turn over possession of the Residential Property and certain records. She argued that Ms. Madatian had failed to cooperate with the real estate agent's efforts to market and sell the property.

Specifically, the Trustee argued that Ms. Madatian had a duty to cooperate and turn over all property of the estate. The Trustee's real estate agent needed to inspect the interior of the Residential Property, take photos, and show the property to prospective buyers. The agent twice attempted to make these arrangements with Ms. Madatian in April 2018 by e-mailing Robert. (The Trustee was informed that Ms. Madatian and Robert share the same e-mail address.) Ms. Madatian did not respond.

Moreover, the Trustee contended that Ms. Madatian did not turn over records concerning the Rental Property, including utility bills, tax statements, insurance statements, and information related to the mortgage. She further alleged that the tenants had refused to pay rent to the Trustee based on statements made by Ms. Madatian or her family.[3]

In opposition to the Motion for Turnover, Ms. Madatian blamed the Trustee for various problems. She alleged that "any judgment amount issued by the [state] court is outside its jurisdiction and thus void ab initio"

---

[3] In March 2018, Ms. Madatian wrote to the Trustee in an e-mail:

> Without first seeing a court order that you, as the chapter 7 trustee is [sic] entitled to cash collateral and income generated from the property, my tenants refuse to pay you. Reason being, they don[']t want to be liable to more than one person.

> Therefore, please produce a court order. Otherwise your agents will be trespassing on my property and will be prosecuted civilly and criminally upon their arrest.

and that the Trustee failed to investigate Ms. Manuel's claims properly. She also claimed that the Trustee had demanded payment from her tenants and seized funds from her bank account, yet the Trustee had not paid any of the Rental Property's expenses, including insurance and mortgage payments. Moreover, she argued that the Trustee had access to all of the requested documents. She stated that she was not uncooperative toward the Trustee's real estate agent and complained that the agent did not try to call her directly, instead relying on Robert's e-mail address.

Ms. Madatian argued that the Trustee was acting in bad faith. She said that, by virtue of her claimed exemption in the Residential Property, she was a tenant in common with the Trustee, and her possessory interest precluded the Trustee from removing her from the property without paying or adequately protecting the exemption amount. Further, she claimed that the Trustee had failed to give her adequate notice of the sale of the Residential Property as required by § 363.

In her reply brief, the Trustee argued that Ms. Madatian's position that the Trustee could not sell the property was nonsensical. She asserted that she had been unable to pay the Rental Property's operational expenses because Ms. Madatian and Robert were impeding administration of the estate such that she had been able to collect rent from only one of the six tenants. Moreover, she stated that Ms. Madatian had attended a § 341(a) meeting of creditors in April 2018 but had walked out after complaining

that the Trustee had withdrawn funds from the debtor-in-possession account; Ms. Madatian did not appear at the three subsequent meetings.

At the hearing on the Motion for Turnover, the bankruptcy court ruled that the Trustee was entitled to turnover of the Residential Property and the records associated with the Rental Property.

Regarding the Rental Property records, the court required Ms. Madatian to surrender the requested documents under § 521(a)(4). It also found that Ms. Madatian was "interfering with the Trustee's collection of rent from which to pay expenses and refusing to simply provide the documents containing the information necessary to pay the expenses . . . ."

As for the unpaid rents, the court found that the evidence "tends to corroborate what the Trustee has heard about the Debtor and [her family] apparently telling tenants not to pay the rent to the Trustee." It ordered Ms. Madatian to cooperate with the Trustee as to the collection of rent.

Finally, the court stated that the Trustee "is absolutely entitled to turnover of the residence." It rejected Ms. Madatian's theory that she and the Trustee are co-tenants. The court stated that the Trustee can evict an uncooperative debtor under § 542(a), and "there's ample evidence demonstrating that this Debtor and her family will not cooperate with the [Trustee's] efforts to market the residence and that turnover is necessary."

The court listed the various facts demonstrating Ms. Madatian's failure to cooperate with the Trustee: (1) Ms. Madatian failed to file

chapter 11 monthly operating reports; (2) she failed to file a disclosure statement; (3) she sent the Trustee an e-mail threatening civil and criminal prosecution if the Trustee or her agents "trespassed" on the Rental Property; (4) she stormed out of the § 341(a) meeting and refused to appear thereafter; (5) she refused to provide the Trustee with her tax returns and other requested documents; (6) she appeared to tell the tenants not to pay rent to the Trustee; (7) she did not respond to the real estate agent's e-mails; and (8) she did not provide any evidence to contravene the declaration testimony offered by the Trustee. The court concluded that Ms. Madatian's "obstreperous conduct demonstrates there's really no practical way for the Trustee and her broker to market this residence and show it to prospective buyers while the Debtor continues to occupy it."

The bankruptcy court issued an order ("Turnover Order") granting the Motion for Turnover but allowed Ms. Madatian a reasonable time to vacate the Residential Property.

E.     **The motion for reconsideration**

Ms. Madatian timely filed a motion ("Motion for Reconsideration") requesting that the bankruptcy court reconsider the Turnover Order. She informed the court that she was attempting to have the state court set aside the default judgment. She also argued that, even if the state court denied her motion, she could mortgage the Residential Property and refinance the Rental Property to pay off her debts.

The bankruptcy court issued an order ("Reconsideration Order") denying the Motion for Reconsideration. It said that her strategy was flawed: even if she prevailed in state court, she "simply has no standing to refinance or mortgage any of the property of the estate and . . . no pecuniary interest in property of the estate." The court also noted that Ms. Madatian failed to include in her calculations the administrative claims of the Trustee's professionals and others.

Ms. Madatian timely appealed from the Turnover Order. She did not appeal from the Reconsideration Order.[4]

## F.      Further developments

Following the state court's decision to set aside the default judgment as to Robert, Ms. Madatian filed an adversary complaint in the bankruptcy court to determine the validity of the default judgment, arguing that the judgment was also void ab initio as to her. The bankruptcy court dismissed the complaint with prejudice under the *Rooker-Feldman* doctrine.

Ms. Madatian has attempted to convince the state court to set aside the state court judgment, but to date she has been unsuccessful.

In October 2018, she entered into a stipulation with the Trustee whereby she could remain on the Residential Property by paying the estate rent at $2,500 per month. The court approved the stipulation in December

---

[4] In her opening brief, Ms. Madatian acknowledges the Reconsideration Order, but she does not challenge any part of that ruling.

2018. According to the Trustee, Ms. Madatian has defaulted on her rent payments.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in ordering turnover of the Residential Property due to Ms. Madatian's failure to cooperate with the Trustee and her agents.

(2) Whether the bankruptcy court erred in ordering turnover without providing Ms. Madatian with adequate protection under § 363.

## STANDARDS OF REVIEW

We review the bankruptcy court's factual findings for clear error. *Hutton v. Treiger (In re Owens)*, 552 F.3d 958, 960 (9th Cir. 2009). Factual findings are clearly erroneous only if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

We review de novo the bankruptcy court's interpretation of the Bankruptcy Code. *Shapiro v. Henson*, 739 F.3d 1198, 1200 (9th Cir. 2014). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

10

**DISCUSSION**

**A.  The bankruptcy court did not err in ordering turnover of the Residential Property.**

Ms. Madatian takes issue with the bankruptcy court's finding that she did not cooperate with the Trustee. She misapprehends her responsibility as a debtor.

As a basic principle, "a chapter 7 trustee has the duty to 'collect and reduce to money the property of the estate for which such trustee serves . . . .' To fulfill this duty, the trustee's 'primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors.'" *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP 2014) (quoting § 704(a)(1); *U.S. Tr. v. Joseph (In re Joseph)*, 208 B.R. 55, 60 (9th Cir. BAP 1997)). A debtor has a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." § 521(a)(3). If the debtor fails to cooperate, the trustee may seek turnover of estate property. *See Collect Access LLC v. Hernandez (In re Hernandez)*, 483 B.R. 713, 720 (9th Cir. BAP 2012) ("A bankruptcy court may order turnover of property to the debtor's estate if, among other things, such property is considered 'property of the estate.'"); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) ("[Debtor] has been uncooperative. The trustee needs a turnover order to market and sell the property.").

Ms. Madatian argues that the bankruptcy court erred in ordering

turnover based on her lack of cooperation. She contends that the court failed to consider her arguments and complains that the real estate agent never tried to contact her directly by phone.

But Ms. Madatian misconstrues the bankruptcy court's findings. It did not ignore her position but, rather, found the Trustee's position persuasive and well supported by declarations in evidence. It acknowledged that Ms. Madatian stated that she did not receive the e-mails but also noted that she did not submit any declaration testimony or admissible evidence to refute the Trustee's evidence; she also did not deny that Robert received the e-mails or that she knew that the Trustee's agent was trying to access and show the Residential Property.[5] Her only argument, that the agent did not try to telephone her, was not persuasive. The bankruptcy court did not clearly err in finding that Ms. Madatian was uncooperative.

She seems to argue that her lack of cooperation was excused because the Trustee withdrew $8,000 from her debtor-in-possession account. She points out that the Trustee has failed to make payments regarding the Rental Property, which "begs the question of who is uncooperative."

This argument rests on the false assumption that a trustee has a duty

_____

[5] Ms. Madatian states in her appellate brief that the two e-mails were directed to Robert's "spam" folder. She did not make this claim in the bankruptcy court, and we will not consider it for the first time on appeal.

to "cooperate" with the debtor. While debtors owe a statutory duty to cooperate with trustees, the trustee is not obligated to cooperate with the debtor. Trustees usually try to take a non-confrontational approach to debtors, but that is a matter of courtesy or expedience, not a legal duty.

Further, Ms. Madatian again conveniently ignores the court's findings. The court explained that the funds in the debtor-in-possession account were estate assets, and the Trustee was entitled to withdraw the money and use it for the benefit of the estate. *See In re KVN Corp., Inc.*, 514 B.R. at 5. The court also found that the Trustee could not pay the operational expenses of the Rental Property because Ms. Madatian had hindered the Trustee's attempts to collect rent from the tenants. In fact, the court enumerated the many ways in which Ms. Madatian had failed to cooperate with the Trustee. These findings are not clearly erroneous. In any event, a debtor is not allowed to interfere with the trustee's administration of the estate just because she disagrees with the trustee's actions.[6] We discern no clear error.

---

[6] We are equally unpersuaded by Ms. Madatian's argument that she was justified in walking out of the § 341(a) meeting because she had already attended two meetings, "each one taking more than thirty minutes." A debtor must attend and truthfully answer questions at the meeting of creditors, and the trustee may continue the meeting to a later date. *See Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028, 1031 n.4 (9th Cir. 1994) ("Even if debtors attend a 341(a) meeting and provide the requested information, the information may prove inadequate, or it may point to other sources. The trustee therefore has broad discretion whether to adjourn or conclude the meeting.").

**B.**    **The Trustee was not required to provide Ms. Madatian with adequate protection.**

Ms. Madatian's other argument concerns the "adequate protection" requirement of § 363(e). This section is inapplicable to the current case.

Section 542(a) provides:

> (a) Except as provided in subsection (c) or (d) of this section, **an entity**, other than a custodian, **in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title**, or that the debtor may exempt under section 522 of this title, **shall deliver to the trustee, and account for, such property** or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 542(a) (emphases added). Similarly, § 521(a)(4) states that a debtor has a duty to "surrender to the trustee all property of the estate." § 521(a)(4).

Section 542(a) references § 363, and Ms. Madatian invokes § 363(e). That section provides, in relevant part:

> on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

§ 363(e).

Ms. Madatian asserts that, because she had an exemption right in the Residential Property, California law affords her "immediate possession of

the property" and her possessory interest in the Residential Property is not a part of the bankruptcy estate. She contends that she is a co-tenant with the Trustee and the "Trustee should not be allowed to deprive [her] of the possessory right she enjoys in her residence, without first adequately protecting her interest [by] paying her the full exemption amount." She cites a Seventh Circuit case, *In re Szekely*, 936 F.2d 897 (7th Cir. 1991), in support of her position.[7]

There is no authority for the proposition that California law gives a debtor a possessory or other interest in estate property that must be adequately protected **before** the sale of the property. Rather, the Ninth Circuit has explicitly held that, under California state law, the homestead exemption applies to the sale proceeds, not the property itself; it permits the involuntary sale of a homestead, with the debtor receiving the proceeds of the homestead exemption **after** the sale:

> The homestead exemption merely gave the [debtors] a conditional right to a portion of the proceeds from the sale of the . . . property. There was no exemption in the . . . property itself. To the contrary, the exemption explicitly allowed [creditor] to force a judicial sale of the . . . property.

---

[7] The Trustee has informed us that, a few months ago, Ms. Madatian agreed to pay rent to the Trustee for her continued occupancy of the Residential Property. This might amount to a waiver of her arguments about the nature of the California homestead exemption. The parties have not briefed the issue (the bankruptcy court approved the stipulation after the last brief was filed), so we will not express an opinion on this issue.

*Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012) (citing Cal. Civ. Proc. Code § 704.740); *see id.* at 1198 ("The California homestead exemption does not, however, prevent a judgment creditor from forcing a judicial sale of the homestead. . . . When the . . . property was sold, the California homestead exemption entitled the [debtors] to $150,000 of the proceeds." (citations omitted)). Therefore, Ms. Madatian is not entitled to payment of the exemption amount until a sale closes.

Ms. Madatian's reliance on *Szekely* is misplaced. In that case, the debtors claimed an exemption in their home under Illinois law and remained in possession during their bankruptcy case. The bankruptcy court entered an order requiring them to pay rent to the trustee at $600 per month. Because the debtors could not pay the rent, everyone understood that the rent would be paid out of the debtors' exempt amount after the property was sold. The debtors later moved out of the property, and the trustee sold the property for enough money to pay the mortgages and the exemption in full. But the trustee deducted the unpaid rent from the exempt amount. The Seventh Circuit held "that the homestead exemption in Illinois entitles the debtor to remain in his home rent free until he receives the cash value of the exemption." 936 F.2d at 903.

*Szekely* is inapplicable. In the first place, since *Szekely* was decided, the Supreme Court has ruled that trustees may not invade a debtor's exemptions except as the Bankruptcy Code expressly provides. *See Law v.*

16

*Siegel*, 571 U.S. 415, 425 (2014). Therefore, even if a trustee had a right to charge rent to a debtor, the trustee could not recover the rent out of the proceeds of the debtor's exemption. More to the point, unlike the Illinois statute, California law permits the sale of property before the debtor receives the cash amount of the exemption. *See In re Jacobson*, 676 F.3d at 1198-99; Cal. Civ. Proc. Code § 704.720(b).

Relatedly, Ms. Madatian argues that the court has no power to force her to vacate the Residential Property because "the word 'evict' is not even found in the wording of 11 USC § 542[.]" This argument is similarly unavailing. Section 542(a) requires debtors to turn over virtually all estate property to the trustee. If the debtor does not comply, the bankruptcy court has the power to require compliance by, in effect, evicting the debtor from the property. Ms. Madatian does not cite any applicable law that prevents a court from removing a debtor from estate property. *See In re Bolden*, 327 B.R. at 668 (holding that, if a debtor is uncooperative, "[t]urnover of the property will facilitate the trustee's sale of the property and will enable unsecured creditors to be paid"). Thus, the bankruptcy court properly ordered turnover of the Residential Property under § 542(a).

## CONCLUSION

The bankruptcy court did not err in directing Ms. Madatian to vacate the Residential Property and ordering turnover of the property and records. We AFFIRM.