**In re CULT AWARENESS NETWORK, INC., Debtor.**

**Bankruptcy No. 95 B 22133.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 14, 1997.

Philip V. Martino, Elizabeth A. Graber, Rudnick & Wolfe, Chicago, IL, for Elected Trustee, Movant.

Benhamin P. Hyink, Hyink & Scannicchio, Chtd., Chicago, IL, for Debtor.

Roman Sukley, Dept. of Justice, Chicago, IL, for U.S. Trustee.

Graham E. Berry, Musick, Peeler & Garrett, Los Angeles, CA, Rick A. Mason, Gilbert, Mason & Schoenstedt, Joliet, IL, for Jason Scott, Creditor.

Bruce E. de'Medici, Weinstein, Fischer, Riley, Erickson & Wolf, Chicago, IL, for Former Trustee.

Walter P. Maksym, Walter P. Maksym & Associates, Oak Brook, IL, for Landmark Education Corp.

Phillip Stern, Freeman, Freeman & Salzman, Chicago, IL, Kendrick L. Moxon, Moxon & Bartilson, Hollywood, CA, Robert Lippman, Laguna Hills, CA, Steven L. Hayes, Bowles & Hayes, Los Angeles, CA, David W. Wirt, Sidley & Austin, Chicago, IL, John M. Beal, Chicago, IL, Herbert L. Rosedale, Parker, Chapin, Flattu & Klimpl, New York City, David J. Letvin, Letvin & Stein, Chicago, IL, Cynthia S. Kisser, Wonder Lake, IL, for Intern. Cult Education Program.

## AMENDED MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Chapter 7 Trustee moved to abandon assets of the estate consisting of the Debtor's files. The files have value because they contain information about various religious organizations. The files are also a burden because they also contain the names of individuals who have threatened to sue the Trustee if those names are disclosed. The Trustee determined that the financial burden outweighs the value of these assets to the estate and moved to abandon the files. The Court concluded that he was acting within the scope of his discretion and granted the motion. This opinion explains the Court's reasons for granting that motion.

## FACTUAL BACKGROUND

Cult Awareness Network ("CAN") was a not for profit organization that, by its own definition, was an information service. CAN researched the activities of entities that CAN, its members, or its contributors believed were cults. CAN kept dossiers on each entity determined to be a cult and over the course of several years amassed files on many religious groups. It disseminated this information to parties upon request.

CAN's activities drew significant opposition from the religious organizations that CAN identified as cults. That opposition often took the form of litigation. One lawsuit resulted in a significant judgment against CAN, which precipitated CAN's voluntary petition for relief.[1]

CAN filed for relief under Chapter 11 of the Bankruptcy Code on October 19, 1995. Because of the many lawsuits filed prior to the bankruptcy petition, many religious groups CAN deemed to be cults became parties in interest, objecting to any proposed action. CAN's proposed plans unfairly discriminated against these creditors and CAN was, therefore, unable to propose a confirmable plan.

CAN voluntarily converted the case to one under Chapter 7 of the Bankruptcy Code, and an interim Chapter 7 Trustee was appointed. The creditors moved for the election of a Chapter 7 trustee pursuant to section 702 of the Bankruptcy Code and Philip Martino became the duly elected Chapter 7 Trustee.

The Trustee received an offer from a former principal of the Debtor, Cynthia Kisser, to buy certain assets. Ms. Kisser offered to purchase certain intellectual property rights, including the name "Cult Awareness Network" and various trademarks associated with that name; certain office equipment; and several pending lawsuits in which CAN was the plaintiff. Ms. Kisser offered $9,000 for these assets.

---

**1.** In the California case of *Scott v. Cult Awareness Network,* a jury found that CAN had made a referral to a "deprogrammer" who then kidnaped a "cult" member, Jason Scott and held him against his will in an attempt to "deprogram" him. That judgment is currently on appeal.

The Trustee moved to sell those assets pursuant to 11 U.S.C. § 363. There was no opposition to the sale. At the hearing on the sale, other entities bid for the assets, which ultimately sold for $20,000 to a bidder other than Ms. Kisser. Neither CAN nor any of the creditors objected at that time. CAN's attorney was present at the hearing, as was Ms. Kisser.[2]

After the hearing, but before the final order approving the sale was entered, CAN objected to the sale of assets. CAN submitted briefs in opposition and the Trustee incurred significant administrative expenses defending the sale. CAN made several arguments to this Court, mostly lambasting the purchaser of the assets as a "scientologist" and arguing that the parties opposed to CAN's existence should not be allowed to purchase the intellectual property of CAN. In an eleventh hour submission, CAN filed a brief in which it argued that such a sale would, by definition, be "without goodwill" and a violation of the Lanham Act. The Court found that CAN had no standing to object and approved the sale.

As a result of these activities, the estate did not ultimately receive much benefit from the sale of these assets. According to the fee application of the Trustee and his Counsel and representations made to the Court at the hearing on abandonment, the estate has incurred almost $20,000 in legal fees defending this sale. Furthermore, CAN has appealed this Court's decision to approve the sale, which will increase the administrative expenses of that sale. It is safe to predict that the legal fees will ultimately far exceed the $20,000 brought into the estate because the parties in this case have demonstrated a willingness to litigate regardless of the economic ramifications either to themselves or to the estate.

With that experience in mind, the Trustee filed a notice of intent to abandon the files in his possession. These are the information files that CAN has amassed on religious entities that CAN has labeled "cults." The Trustee has received an offer from an entity that asserts it is an information organization similar to CAN. The offer is for $75,000 plus indemnification of legal fees incurred by the Trustee and the Trustee's law firm in defending the sale.

CAN and certain members and contributors of CAN, known collectively to the Court only as "John Doe," object to any sale of these files. Both CAN and John Doe argue that these files contain the names of various individuals who have associated with CAN in the past. These individuals fear that their privacy rights will be violated and that they may be harassed if this information is passed on to the organizations that CAN has targeted as cults.

At the hearing, the Trustee stated his reasons for electing to abandon assets with an apparent value of at least $75,000. He made extensive representations about his experiences.[3] He informed the Court that several members and contributors have individually sent letters and called the Trustee many times, threatening to sue both the Trustee and the Trustee's law firm if these records are released. The Trustee has received such threats both at home and at the office, and partners in his firm have received threats that they will be sued if they do not terminate the Trustee's employment at the firm. The Trustee detailed these threats and also informed the Court of other suspicious and, quite frankly, bizarre events that have unfolded since he has proposed to abandon these assets.[4]

---

2. In fact, at the hearing on the sale, all parties discussed in detail the assets to be offered for sale and came to an agreement regarding what would be included in the auction. Proper notice was given for the hearing, and there were no other defects in process that would not allow the sale to conclude.

3. There was no evidentiary hearing. No party requested one, and there is no dispute about the facts, except a few details. Moreover, as will be discussed below, the issue here is whether the Trustee exercised sound business judgment. Under the circumstances here, that determination does not depend on any contested issue of fact, but on the Court's evaluation of the Trustee's articulated reasons for his action.

4. For example, on January 21, 1997, according to the Trustee, he received a letter dated January 17, 1997, from the Foundation for Religious Freedom (the "Foundation"), in which the Foundation offered to purchase the files in question for $75,000 and indemnify the estate. Approxi-

The various parties in interest, most of whom are organizations CAN has deemed to be "cults," argue against abandonment. They argue that the privacy rights can be litigated economically and that the party offering to purchase these assets has offered to indemnify the Trustee for these expenses. They have filed an adversary proceeding to determine what, if any, privacy rights exist. They suggest that the Trustee should "step aside" and allow that proceeding to run its course. They assert that once the Court has determined what privacy rights exist, the Trustee may step back in and appropriately dispose of the assets in question.

The U.S. Trustee takes the position that the assets should be abandoned. The U.S. Trustee has repeatedly argued that the issues these parties bring before the Court are not bankruptcy issues, but are religious and Constitutional issues. These issues, they argue, do not belong in a bankruptcy court and should be litigated in another forum. The U.S. Trustee asserts that this Court has no jurisdiction to determine the rights of hundreds of third parties not before the Court, and that, therefore, the adversary proceeding cannot go forward and is an inappropriate vehicle to determine the respective rights of the parties in this case.

Furthermore, the U.S. Trustee asserts that proposed indemnification would be inadequate because it is impossible to estimate the amount of litigation the sale of these assets would generate. It is unknown how many individuals fall into the category of "John Doe," and it is difficult, at best, to predict how many lawsuits will be filed and in how many jurisdictions. It is also not clear that the party who has offered this indemnification has the means to indemnify the Trustee, and the Trustee and his law firm would be left holding the bag if the purchaser was ultimately unable to indemnify the Trustee for all litigation costs.

It has also been suggested that the Trustee should redact each document to secure the privacy rights of John Doe. To effectuate this proposal, prior to the Trustee's current notice of intent to abandon, CAN, the various religious organizations that CAN has labeled as cults, the Trustee, and representatives of John Doe, attempted to negotiate a redaction protocol. This redaction protocol would require the Trustee to personally review each document and remove the names of any individuals found in each document prior to its release to any purchaser. Some progress was made on this negotiation process, but CAN ultimately refused to sign the protocol.

The Trustee has determined that the ultimate cost to the estate in administrative fees will far outweigh any benefit to the estate from the sale of these assets. The Trustee points out that he sold assets after an uncontested hearing, then watched the legal fees incurred to defend that sale grow until it now appears that those fees will exceed the proceeds of the sale. The Trustee asserts that if it will cost in excess of $20,000 to defend a sale of assets that was not contested prior to the actual sale, it will most likely cost well in excess of $75,000 to litigate the sale of these assets, which is already hotly disputed.

## DISCUSSION

The Trustee may abandon an asset of the estate if it is burdensome to the estate or of inconsequential value and benefit to the estate. 11 U.S.C. § 554(a). The unique problem in this case is that the Trustee is asserting that an asset that may draw as much as $75,000 is burdensome because the costs of defending any sale far outweigh any value the asset may have to the estate. Given the unique posturing of the parties in this case, and the highly contentious nature of these ongoing proceedings, the Court has overruled the objections and allowed the Trustee to abandon these assets.

mately three days later, the Trustee received a letter from the current lawyer for Jason Scott, the judgment creditor mentioned in footnote one, asserting that the Trustee should not sell these files to the Foundation because the president of the Foundation is a scientologist. On January 27, 1997, the Trustee received a second letter from the Foundation asserting that several reli-

gions are represented on the board of the Foundation, and the fact that one or two are scientologists is irrelevant. This exchange of letters is somewhat baffling given the fact that the Trustee did not discuss the offer with anyone, does not know how Mr. Scott's lawyer found out about the offer, and does not know how the Foundation discovered the content of the lawyer's letter.

■ Pursuant to section 704 of the Bankruptcy Code, it is the Trustee's duty, *inter alia,* "to collect and reduce to money" all assets of the estate "as expeditiously as is compatible with the best interest of the parties in interest." 11 U.S.C. § 704. The Trustee has substantial discretion to perform these duties. *E.g., Scherer v. Federal Nat'l Mortgage Assoc. (In re Terrace Chalet Apartments, Ltd.),* 159 B.R. 821, 824 (N.D.Ill. 1993) (trustee has discretion regarding sale of assets).

■ This same discretion applies when the Trustee makes a determination that assets of the estate should be abandoned. *See, e.g., First National Bank v. Lasater,* 196 U.S. 115, 118–119, 25 S.Ct. 206, 208, 49 L.Ed. 408 (1905) ("trustees in bankruptcy are not bound to accept property of an onerous or unprofitable character...."); *Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine & Tool Co.,* 816 F.2d 238, 246 (6th Cir.1987)); *In re Interpictures, Inc.,* 168 B.R. 526, 535 (Bankr.E.D.N.Y.1994) ("courts have uniformly held that a trustee's power to abandon property is discretionary."); *Goger v. United States (In re Janmar, Inc.),* 4 B.R. 4, 9 (Bankr.N.D.Ga.1979) ("power of abandonment is in the nature of a 'trustee's power to pick and choose.' [citation omitted]"). Courts do not want to encourage a Trustee to keep burdensome or valueless property in an estate to increase the amount of fees paid to the Trustee and to the various administrative representatives of the Trustee. *See K.C. Machine & Tool,* 816 F.2d at 246; *Interpictures,* 168 B.R. at 535. The only per se restriction on a trustee's power to abandon is that the trustee may not abandon property of the estate if to do so would violate state or federal law. *See Midlantic Nat'l Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 501–02, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986). The party seeking to make the trustee act or prevent him or her from acting has the burden to show an abuse of discretion. *Interpictures,* 168 B.R. at 535.

■ In reviewing the Trustee's decision to abandon property of the estate, the court must only examine that decision to ensure it reflects a business judgment made in good faith. *In re Fulton,* 162 B.R. 539, 540 (Bankr.W.D.Mo.1993); *In re Wilson,* 94 B.R. 886, 888 (Bankr.E.D.Va.1989). Such a decision must rest on a reasonable basis. *Fulton,* 162 B.R. at 540; *Wilson,* 94 B.R. at 888–89. The Trustee, therefore, need only demonstrate that he has exercised sound business judgment in making the determination to abandon.

■ In this case, the Trustee has used sound business judgment in determining whether to abandon these assets. The parties are not as interested in bringing funds into the estate as they are in obtaining or protecting the information found in these files. The history of the case reveals that any disposition of assets will spawn endless litigation. John Doe and CAN have already threatened to bring lawsuits against the Trustee for breach of their rights to privacy and freedom of association. The litigious conduct of CAN throughout these proceedings and the numerous threats the Trustee has received from various John Does, indicate that regardless of whether any such lawsuit will have merit, several are likely to be filed against the Trustee, causing unusually high administrative expenses in the event these assets are sold. The Trustee has analyzed the likely outcome of selling the assets and abandoning them and determined that in his business judgment the assets should be abandoned. The Court cannot conclude that the Trustee has abused his discretion in making this determination or that the reasons for this decision not sound.

The Trustee has analyzed and rejected the options proposed by those objecting to abandonment. Even if an agreement could be reached on the redaction protocol and the Trustee successfully redacted each document prior to its transfer (at a cost to the estate), there is nothing to prevent parties from suing the Trustee and the Trustee's law firm. In fact, several parties believe the Trustee has already sold their names assert they are being harassed, and have threatened legal action. There is no way to estimate the costs of these prospective suits. There is, therefore, no meaningful way to include an indemnification clause into any sales contract entered into between the Trustee and the

purchaser of these assets and the party that made the offer has in no way demonstrated that it has the capacity to indemnify the Trustee up to the full extent required should these assets be sold.

The objectors complain, however, that abandonment rewards CAN and others for obstructing the Trustee in the performance of his duties. There is much to be said for that argument, but ultimately the success or failure of a bankruptcy case depends on the economics of the case. In the usual case, parties may fight over an asset, but each will limit its activities according to the value in dollars the asset has to it. Here, the value of this asset to the potential buyers appears to be at least equaled by the value the objectors place on keeping the files out of the hands of those buyers. But rather than bid dollars at an auction, the objectors make credible threats of lawsuits.

The Trustee is not a partisan. His job is to "collect and reduce to money" the property of the estate. As offensive as it may be to allow such threats to prevail, the Trustee must make a purely economic judgment. The Trustee has done so here. That judgment is not unreasonable or beyond the scope of his discretion. It will, therefore, be upheld.

## CONCLUSION

For these reasons, the Trustee has been given leave to abandon these assets.