Jason SCOTT, Plaintiff–Appellee,

v.

Rick ROSS, aka Rickey Allen Ross; Mark Workman; Charles Simpson, Defendants,

and

Cult Awareness Network, a California Non–Profit Corp., Defendant–Appellant.

No. 96–35050.

United States Court of Appeals, Ninth Circuit.

Aug. 26, 1998.

Before: SCHROEDER and BEEZER, Circuit Judges, and SCHWARZER,* Senior District Judge.

Order; Concurrence by Judge SCHROEDER; Dissent by Judge KOZINSKI.

## ORDER

The majority of the panel has voted to deny the petition for rehearing. Judge Schwarzer votes to grant the petition. Judge Schroeder votes to reject the suggestion for rehearing en banc and Judge Beezer so recommends.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration.

Pursuant to Rule 35(b) of the Federal Rules of Appellate Procedure, the petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

Appellee's motion to vacate this court's October 27, 1997 Order staying execution of judgment is granted.

SCHROEDER, J., concurring:

I agree fully with Judge Beezer's opinion and write separately only to emphasize a key fact in this case. In Judge Schwarzer's dissent, his bread-delivery hypothetical suggests that Landa might have made the referral to Ross on behalf of an anti-cult organization other than CAN. There was, however, no evidence that Landa ever made referrals on behalf of other organizations. Rather, the evidence was sufficient to enable the jury to find that Landa was acting on behalf of CAN and no other organization when she referred Tonkin to Ross.

**KOZINSKI,** Circuit Judge, with whom **PREGERSON, REINHARDT, KLEINFELD, HAWKINS, TASHIMA** and **McKEOWN,** Circuit Judges, join, dissenting from the order rejecting the suggestion for rehearing en banc:

This is the case that put the Cult Awareness Network out of business and silenced its message. It is a bitter object lesson in the dangers of ignoring the Supreme Court's pronouncement in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982).

Plaintiff's mother, Kathy Tonkin, sought help in extricating three of her sons from the Life Tabernacle Church. Her eldest son Jason Scott, an adult, was brought into involuntary contact with Rick Ross through the following chain of events: (1) Tonkin contacted (2) the Seattle Community Service hotline, which referred her to (3) Parent Awareness, a local anti-cult organization. Parent Awareness was staffed by (4) Shirley Landa, who holds herself out as an expert in deprogramming children involved in cults. Landa then referred Tonkin to (5) Rick Ross. Tonkin hired Ross, and Ross illegally abducted the plaintiff, held him captive and unsuccessfully tried to convince him to leave the church. Ross, CAN and others were held liable for conspiracy to violate Scott's civil rights; CAN was socked for $87,500 in compensatory and $1 million in punitive damages.

CAN is nowhere to be found in the chain of referrals, yet the panel majority upholds the million dollar award. CAN, a nonprofit organization with just four paid employees, maintained a list of contacts throughout the country who volunteered to speak out against cult membership and mind control. Landa was one of CAN's volunteer contacts. CAN didn't know about or authorize the referral to Ross. Nor did it know about, authorize, condone or ratify Scott's deprogramming. Tonkin never sought CAN's assistance to help deprogram her sons. CAN had no control over the referral or what happened afterwards.

The panel majority nevertheless upholds the award on the theory that Landa was acting as CAN's agent. This is a dubious premise to begin with: Landa wasn't paid by CAN, and she worked with many other anti-cult organizations, all of which could be held jointly liable under the panel's logic. *See Scott v. Ross*, 140 F.3d 1275, 1287 (9th Cir. 1998) (Schwarzer, J., dissenting). More importantly, the panel ignores the threat that vicarious tort liability poses to the freedom of CAN's members to associate with one another. In direct contravention of the Supreme Court's holding in *Claiborne Hardware*, the majority literally holds CAN guilty by association.

*Claiborne Hardware* involved a sometimes-violent black community boycott of white-owned businesses in Mississippi. The boycotters were held liable under Mississippi law for the loss of business and goodwill caused by the boycott. Claiborne Hardware secured a judgment in state court holding the NAACP vicariously liable for the acts of Charles Evers, a Field Secretary for the

NAACP and an organizer of the boycott. In determining whether Evers' relationship with the NAACP justified the imposition of derivative liability, the Supreme Court considered whether "Charles Evers or any other NAACP member had either actual or apparent authority to commit acts of violence," *Claiborne Hardware*, 458 U.S. at 930, 102 S.Ct. 3409; whether the NAACP ratified or had specific knowledge of any violence, *see id.* at 930–31, 102 S.Ct. 3409; and whether the NAACP supplied financial assistance to the boycott, *see id.* at 931, 102 S.Ct. 3409. Finding that the NAACP had in no way authorized or ratified the violence, the Court held that "[t]o impose liability ... would impermissibly burden the rights of political association that are protected by the First Amendment." *Id.*[1]

Shirley Landa's relationship with CAN was far less direct than Charles Evers' link to the NAACP. Evers was a paid Field Secretary for the NAACP; Landa was an unpaid volunteer for CAN and many other organizations. Evers helped found the local branch of the NAACP and was widely known as an NAACP representative; Tonkin was referred to Landa by the Seattle Community Service hotline and had never heard of CAN when she requested Landa's help. In *Claiborne Hardware*, the Court exonerated the NAACP even though "the NAACP ... posted bond and provided legal representation for arrested boycott violators." *Id.* at 931 n. 78, 102 S.Ct. 3409. In this case, CAN never ratified Landa's referral in any way. By any measure, this is an *a fortiori* case to *Claiborne Hardware*.

The majority distinguishes *Claiborne Hardware* in a single sentence: "In *Claiborne*, the evidence did not tie the NAACP to the purportedly illegal acts of its representative; here, CAN has been directly linked to the acts of its agent, Landa." *Scott*, 140 F.3d at 1283. And what is this link? The panel

explains that "CAN members routinely referred callers to deprogrammers, including involuntary deprogrammers." *Id.* But involuntary deprogramming is not illegal; involuntary deprogramming of minors with the consent of their parents is perfectly legal. Thus, it would have been entirely appropriate for CAN to refer the distraught parents of a minor to someone who will subject the child to involuntary (though nonviolent) deprogramming.[2] Nothing in the opinion—nothing in the record—provides any support for the view that CAN approved or authorized *illegal* deprogramming. Indeed, CAN had an official policy *against* illegal deprogrammings. The majority dismisses this policy as inconsistent with CAN's actual practices, but it is simply mistaken: CAN supported involuntary deprogramming of minors, but not involuntary deprogramming of adults. The opinion cites no contrary evidence because there is none.

There is a big difference between advocating an activity when it is lawful and advocating the same activity when it is unlawful. Fallacious reasoning that conflates the two is especially dangerous in the First Amendment context. Take the proverbial parade down Main Street: Many organizations encourage their members to stage such events in order to bring their message to the public. Does this mean that they advocate holding demonstrations during rush hour without a permit? Under the majority's theory, the organization could be held liable for injuries caused by an illegal demonstration held by one of its affiliates, even though the parent never authorized or advocated an illegal demonstration. All lawful conduct can be conducted in an illegal fashion; ignoring this crucial distinction does away with the protection afforded organizations under *Claiborne Hardware*.

Just as *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686

---

1. The Court made it plain that this holding was wholly independent of its separate holding that Evers' leadership and organization of the boycott, even when combined with his emotionally charged rhetoric, did not justify imposing liability on him for violent acts that occurred weeks or months after one of his speeches.

2. Indeed, the opinion recognizes that involuntary deprogramming is not always illegal when it notes that a CAN employee saw a television program that reported that "Ross restrained a fourteen-year old boy and conducted an involuntary, although not illegal, deprogramming." *Id.* at 1282.

(1964), protects freedom of speech by narrowly circumscribing the reach of state libel law, *Claiborne Hardware* limits derivative liability to protect freedom of association. As the Supreme Court has noted: "[I]n cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (quoting *New York Times Co. v. Sullivan*, 376 U.S. at 284–86, 84 S.Ct. 710) (citing, inter alia, *Claiborne Hardware*, 458 U.S. at 933–34, 102 S.Ct. 3409). The evidence cited by the majority here clearly does not provide the support required by the First Amendment.

The reach of strict vicarious liability is potentially endless, and crushing verdicts based on such attenuated claims can easily silence nonprofit organizations. As the Court explained in *Claiborne Hardware:* "To equate the liability of the national organization with that of the Branch in the absence of any proof that the national authorized or ratified the misconduct in question could ultimately destroy it. The rights of political association are fragile enough without adding the additional threat of destruction by lawsuit." *Claiborne Hardware*, 458 U.S. at 931–32, 102 S.Ct. 3409 (quoting *NAACP v. Overstreet*, 384 U.S. 118, 122, 86 S.Ct. 1306, 16 L.Ed.2d 409 (1966) (Douglas, J., dissenting from dismissal of writ of certiorari)) (internal quotation marks omitted).

Is "destruction by lawsuit" a judicial fantasy, a chimera? Indeed not. This is the very case that put CAN out of business. *See In re Cult Awareness Network, Inc.*, 205 B.R. 575, 576 & n. 1 (Bankr.N.D.Ill.1997) (noting that this case "precipitated CAN's voluntary petition for relief" in bankruptcy court); Susan Hansen, *Did Scientology Strike Back?*, The American Lawyer, June 1997, at 62, 67 (describing how CAN was forced to cease operations when it couldn't afford the bond for a stay pending this appeal). CAN effectively died as a direct result of this judgment, and the mission its supporters set out to accomplish died with it.[3] This result is troubling regardless of where one falls on the political spectrum. Should ACT UP be litigated out of existence if one of its protestors punches a photographer? Should Planned Parenthood be shut down because a pro-choice doctor performs an abortion on a minor without obtaining parental consent where required by state law? Should the NRA be put out of business because one of its field representatives provided a firearm to a minor, contrary to the organization's policy? *Claiborne Hardware* already answers these questions in the negative, for much the same reasons that the New York Times can't be held liable if an advertisement ruffles some feathers,[4] a delegate can't be convicted for attending a meeting of the Communist Labor Party,[5] a KKK leader can't be arrested for organizing a protest[6] and Nazis can goose-step in Skokie.[7] We have taken a great leap backwards in the protection of First Amendment freedoms. I dissent.

---

**3.** Strictly speaking, there is an organization that operates under the Cult Awareness Network logo, having bought the logo and 800 number of the original CAN in a bankruptcy court sale of assets. *See* http://www.cultawarenessnetwork.org. It is an organization with a very different message than the original CAN. Some may believe this is a better message. But the message of the original CAN, and those who supported it, has been silenced.

**4.** *See New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**5.** *See Whitney v. California*, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927).

**6.** *See Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

**7.** *See National Socialist Party of America v. Village of Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977).