RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

IN RE: PHILIP CRAIG BURKE; NEKOLIA SWOPE BURKE,

*Debtors.*

_____

RICHARD P. JAHN, JR., Trustee,

*Appellant,*

*v.*

PHILIP CRAIG BURKE; NEKOLIA SWOPE BURKE,

*Appellees.*

No. 16-6603

---

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:15-cv-00246—Travis R. McDonough, District Judge.

Argued: June 13, 2017

Decided and Filed: July 14, 2017

Before: MOORE, GILMAN, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Richard P. Jahn, Jr., Chattanooga, Tennessee, for Appellant. W. Thomas Bible, Jr., Chattanooga, Tennessee, for Appellees. **ON BRIEF:** Richard P. Jahn, Jr., Nancy A. Cogar, Chattanooga, Tennessee, for Appellant. W. Thomas Bible, Jr., William P. Glascock, Jr., Chattanooga, Tennessee, for Appellees. Tara Twomey, NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, San Jose, California, for Amicus Curiae.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Philip C. and Nekolia S. Burke encountered financial distress during the "Great Recession" that began in 2008.  Unable to pay their debts, they filed for Chapter 7 bankruptcy seven years later.  Richard P. Jahn Jr., as bankruptcy trustee of the Burkes' estate, sought to evict the Burkes from their residence in order to make the property easier to sell for the benefit of their creditors.  In response, the Burkes moved to compel the trustee to abandon the property based on their contention that the fair market value of the residence, less the balance due on the mortgage loan, left no net equity for the estate.  The bankruptcy court agreed that the net value of the residence was inconsequential from the viewpoint of the unsecured creditors.  It therefore granted the motion to compel abandonment. The district court concurred.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The Burkes filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in February 2015.  In their bankruptcy schedules, the Burkes listed their residence in Chattanooga, Tennessee as being appraised for $108,000, with a $91,581 balance due on the mortgage.

Jahn, the appointed trustee, moved for an order evicting the Burkes from the property in May 2015.  In his motion, Jahn stated that he "desire[d] to sell the property, but c[ould] not do so with the Debtors still living there."  He further asserted that the value of the residence was "close to $200,000," which would have made its sale considerably more valuable to the Burkes' unsecured creditors than if the property was worth only $108,000 as claimed by the Burkes. Two weeks later, the Burkes filed a motion to compel the trustee to abandon the property.  The Burkes argued that the property's value was in fact $108,000, with a substantial existing mortgage that reduced the net equity to a point that "would provide little or no value to [the Burkes'] creditors."  They asked in the alternative that their Chapter 7 case be converted to a case under Chapter 13 so that they could attempt to keep the residence.

At a hearing on the parties' respective motions, Jahn tendered the Burkes a check for $7,500, this being the value of their statutory homestead exemption in Tennessee. *See* Tenn. Code Ann. § 26-2-301(a). After the Burkes rejected the tendered payment, the bankruptcy court set a date for an evidentiary hearing on the motions. The court noted that the matter appeared to be "really just a factual issue about the value of the house and [its] condition." Jahn implicitly assented, pointing out that the Burkes "have the burden of proof to show that it's of inconsequential value" to the estate.

An evidentiary hearing was held in July 2015. At the hearing, the Burkes and Jahn presented competing appraisals of the property. The Burkes called two different appraisers as witnesses. Joseph Ramirez, the Burkes' first witness, estimated that the residence would be worth $171,000 after necessary repairs related to mold and roofing were made that would cost $63,000, leaving a net value of $108,000. The Burkes' second appraiser, E. Wells Blake Jr., also recognized mold issues and identified other necessary repairs in the home. Blake valued the home at roughly $185,000 after making repairs estimated at $60,000, arriving at a final appraisal of $125,000.

Jahn's realtor, on the other hand, testified that the Burkes' residence was worth $204,000, which he based on his tour of the property. A home inspector also testified for Jahn. The inspector concluded that there was no problem with the roof of the residence and that the mold issue was overstated by the Burkes' appraisers. Jahn himself testified, asserting that, after repairs, the home was worth between $190,000 and $200,000.

The bankruptcy court granted the Burkes' motion to abandon in August 2015, concluding that the residence was of inconsequential value to the estate based on Ramirez's valuation of the property. Jahn's motion to alter or amend the judgment was denied. In the order denying Jahn's motion, the court observed that "this case had been pending almost six months when the court ordered abandonment, and houses are often sold while being occupied by their owners." It also noted that "[t]here is no reason the trustee could not have been marketing the property since the case was commenced in February, particularly in light of the trustee's assertions that only minor repairs [were] needed to render the property marketable."

The district court affirmed the judgment of the bankruptcy court.  This timely appeal followed.

## II.  ANALYSIS

### A.  Standard of review

We review de novo the bankruptcy court's legal conclusions, and we use the clear-error standard to review its factual findings.  *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 716–17 (6th Cir. 1992).  Although we do not defer to the district court's intervening decision, "we consider it with due respect and an eye to the persuasive value of its reasoning."  *In re Kloian*, 115 F. App'x 768, 769 (6th Cir. 2004).

### B.  The abandonment issue

Jahn's principal argument on appeal is that the Burkes lacked standing to compel the trustee to abandon their residence.  He argues that the Burkes were not "parties in interest" with regard to the residence because it was actually property of the estate, and that, to the extent they were "parties in interest" at all, Jahn's tendering of cash for the Burkes' homestead exemption extinguished any standing that they might otherwise have had.  We conclude that these contentions lack merit.

When a debtor declares bankruptcy, an estate is created.  *See* 11 U.S.C. § 541(a).  The estate normally includes the debtor's real property.  *Id.*  A Chapter 7 trustee is responsible for liquidating the estate and using the proceeds to satisfy the debtor's unsecured creditors. *See generally* 11 U.S.C. §§ 704 & 726.  This power to liquidate property of the estate, however, "will not be exercised unless it is made to appear that there is a fair prospect of the property being sold for substantially more than enough to discharge the lien or liens upon it."  *Hoehn v. McIntosh*, 110 F.2d 199, 202 (6th Cir. 1940).  The trustee, in other words, must generally abandon property that does not possess substantial equity.  *See In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("It is now almost universally recognized that where the estate has no equity in a property, abandonment is virtually always appropriate[.]").

This common-law rule was codified in 1978 as part of the Bankruptcy Code, which provides in relevant part that, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). A "party in interest" refers, for example, to "anyone who has a practical stake in the outcome of a case." *In re Morton*, 298 B.R. 301, 307 (B.A.P. 6th Cir. 2003) (quoting *In re Cowan*, 235 B.R. 912, 915 (Bankr. W.D. Mo. 1999)). As has been noted by a bankruptcy court in Indiana, "the debtor is, in a very real sense, the beneficiary of abandonment" because the debtor will get to keep the property (subject to the mortgage loan) if the trustee is ordered to abandon it. *In re Drost*, 228 B.R. 208, 210 (Bankr. N.D. Ind. 1998).

The Burkes were therefore "parties in interest" with respect to the abandonment of their residence because, if they won their motion, they would get to keep their property. Such an interest is as "practical [a] stake in the outcome," *Morton*, 298 B.R. at 307, as a party could have. The Burkes thus had standing to pursue a motion to compel abandonment.

Jahn seeks to avoid this logical conclusion with two arguments. Citing no authority in support of his first argument, he contends that because he tendered the Burkes their homestead exemption—an offer that they did not accept—the Burkes lacked any "legal or possessory interest" in their residence. This argument lacks merit. A homestead exemption is a statutory remedy for debtors that gives them a certain sum of money (in this case, $7,500) to provide them with a "fresh start" after the loss of their property. *See Rousey v. Jacoway*, 544 U.S. 320, 322, 325 (2005).

The homestead exemption is not, however, the exclusive remedy for a debtor facing the loss of his or her residence. An alternative remedy is for the debtor to seek abandonment by the trustee under 11 U.S.C. § 554(b) if the property is "of inconsequential value and benefit to the estate." If Jahn could extinguish the abandonment remedy by simply tendering the homestead exemption, then he could effectively nullify 11 U.S.C. § 554(b). Such an argument overlooks relevant caselaw and the text of the abandonment statute.

Jahn's second argument is that the Burkes lacked Article III standing to proceed on their motion to compel abandonment. To have standing, a party must have suffered an injury-in-fact, that injury must have been caused by the defendant, and the injury must be redressable by a favorable ruling. *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A sale of the residence (and the eviction that Jahn sought) would constitute such an injury, caused by Jahn's actions, and is redressable by a favorable ruling on the motion to compel abandonment.

The cases that Jahn cites in support of his argument to the contrary concern other matters entirely, such as the lack of a debtor's standing to assert a cause of action that was clearly the property of the estate. *See, e.g.*, *In re Jones*, 396 B.R. 638, 646–48 (Bankr. W.D. Pa. 2008) (holding that the debtor lacked standing to bring a claim against the Internal Revenue Service for the improper assessment of a tax deficiency because the cause of action was the property of the estate and had not been abandoned to the debtor). Nor does the debtor have standing to make a request for the abandonment of another's property. *See In re Miller*, 302 B.R. 705, 711 (10th Cir. B.A.P. 2003) (holding that the debtor had no standing to compel the trustee to abandon production equipment and other property that concededly belonged to third parties). In such a case, the debtor has suffered no injury and a ruling in the debtor's favor would not accrue to his benefit.

The abandonment of the debtor's residence by the trustee, on the other hand, generates an immediate material benefit to the debtor, and the sale of that property would surely constitute an injury-in-fact. Jahn has cited no case to the contrary, and we have found none. Indeed, Jahn himself cites a number of cases that assume without discussion that debtors are "parties in interest," and thus have standing to compel abandonment. *See, e.g.*, *In re Heflin*, 215 B.R. 530, 532 (Bankr. W.D. Mich. 1997) (ruling on a debtor's motion to compel abandonment of a 40-acre parcel, noting that the only issue before the court was whether the property was "of inconsequential value and benefit to the estate").

In short, this case clearly falls within the scope of the abandonment statute. The Burkes, being parties in interest to the estate's property, seek to have the trustee abandon their residence because, although it is of inconsequential value to the estate's unsecured creditors, it has real

value to the Burkes. We therefore reject the trustee's position and conclude that the Burkes had standing to compel the trustee to abandon their residence.

## C. The eviction issue

Jahn next argues that he should have been able to evict the Burkes upon the tender of their homestead exemption. Although Jahn concedes that he "has not located a case where this was done before a sale" of a property, he relies heavily on dictum in *In re Szekely*, 936 F.2d 897 (7th Cir. 1991), concerning whether debtors who remain in their residence after filing for bankruptcy are required to pay rent to the estate. The court in *Szekely* concluded that, in light of the language of the homestead-exemption law in Illinois, the debtors were entitled to stay in their residence rent-free until they were paid the homestead exemption. The court wrote: "Because the house belongs to the estate, the trustee can pay the Szekelys their $15,000 [homestead exemption] and tell them to skedaddle, and then rent the house to whomever he pleases until he sells it." *Id.* at 902. But this quote offers Jahn no support because the Szekelys had not sought the remedy of abandonment (since no one disputed that their residence was an asset of value to the creditors) and they had actually wanted the homestead exemption. *Id.* at 900 ("[W]e note first of all that the debtors . . . were claiming the right to withdraw from the estate the full amount of the homestead exemption[.]").

The key issue in the Burkes' case, by contrast, is whether their residence should be in the estate at all, especially where the Burkes were not requesting the homestead exemption. Under these circumstances, there is no authority for the proposition that the trustee can tender the debtors the homestead exemption and cause them to "skedaddle." *See id.* at 902. Such an outcome has no basis in precedent or in the Bankruptcy Code. We therefore decline Jahn's invitation to automatically permit the debtors to be evicted upon the tender of the homestead exemption by the trustee.

## D. Propriety of an evidentiary hearing and the sufficiency of the evidence

Jahn's final arguments fare no better. He first claims that a "valuation hearing should not have been conducted" at all. But this contention can be disposed of by reference to the abandonment statute itself, which expressly requires the bankruptcy court to hold "a hearing"

upon a motion by a party in interest to compel abandonment. *See* 11 U.S.C. § 554(b). Jahn's citation to *In re Cult Awareness Network*, 205 B.R. 575 (Bankr. N.D. Ill. 1997), is inapposite. In that case, the court did not hold a hearing on the trustee's request to abandon estate property because "there [was] no dispute about the facts." *Id.* at 577 n.3. Jahn concedes that the facts in this case were very much in dispute, and he fails to explain how § 554(b)'s express requirement to hold a hearing should not have applied to the Burkes' abandonment motion. His argument on this point is meritless.

Jahn also argues that the bankruptcy court should not have credited Ramirez's estimate that the residence in question was worth only $108,000. We apply the clear-error standard of review to such a factual finding. "A finding of fact is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation marks omitted). The record here is replete with evidence on which the bankruptcy court could reasonably have concluded that the Burkes' estimate of value was the more accurate one, especially because the Burkes presented two appraisers who had thoroughly inspected the house, whereas Jahn presented no appraisers, instead relying on a realtor, a home inspector, and himself. We conclude that the bankruptcy court did not commit clear error when it valued the Burkes' home at $108,000. Because Jahn has conceded that the value of $108,000 would "show [that the residence] had inconsequential value for the estate," we conclude that the bankruptcy court did not err in ordering the trustee to abandon the property.

In a final "Hail Mary" attempt to avoid this result, Jahn filed a supplemental-authority letter following oral argument. He argues that, because the Burkes offered to convert their Chapter 7 case to a case under Chapter 13 and pay the estate roughly $50,000 (albeit by utilizing funds made available by a relative), the bankruptcy court abused its discretion in concluding that the residence was of inconsequential benefit to the estate's unsecured creditors.

Jahn's last-ditch effort fails for two reasons. First, this is an entirely new argument, and "arguments not raised in a party's opening brief . . . are waived." *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013). Second, there is a total disconnect between the debtor's alternative offer and the issue of abandonment. Jahn relies on a single unpublished, out-of-

circuit decision that reversed an abandonment order, not just because (as Jahn claims) the bankruptcy court abused its discretion in disregarding the debtor's offer of payment through a proposed Chapter 13 plan, but because "abandonment is not available where the value of the property has not been established." *In re Buerge*, No. KS-12-074, 2014 WL 1309694, at *19 (B.A.P. 10th Cir. 2014).

The bankruptcy court in *Buerge* had altogether "failed to make the requisite holding as to the [property]'s value." *Id.* In the case before us, the bankruptcy court ably discharged its responsibility in determining the value of the residence. We find Jahn's arguments to the contrary unpersuasive.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.